Michael Machat, Esq. SB#109475
MACHAT & ASSOCIATES, P.C.
8730 W. Sunset Blvd., Suite 250
West Hollywood, California 90069
Telephone: (310) 860-1833
Email: michael@machatlaw.com

Attorneys for Plaintiff
Vampire Family Brands, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| VAMPIRE FAMILY BRANDS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>CHICAGO COFFEE ROASTERY, INC. dba COFFEE MASTERS, NEW KITCHEN STORE, and DOES 1 – 20,<br><br>Defendants. | CASE NO.<br><br>**COMPLAINT FOR TRADEMARK INFRINGEMENT, UNFAIR COMPETITION, INDUCEMENT, CONTRIBUTORY TRADEMARK INFRINGEMENT, and VICARIOUS LIABILITY**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Vampire Family Brands, LLC hereby alleges and asserts:

## I.    JURISDICTION AND VENUE

1.    Plaintiff brings this action for injunctive relief and damages arising out of the unauthorized, unfair, and deceptive competitive practices of Defendants, and each of them, in connection with the commercial use and exploitation of trademarks in violation of the Lanham Act.

2.     This action arises under the Trademark Laws of the United States, including, particularly, Sections 32 and 43 of the Lanham Act, 15 U.S.C. §1114 and §1125.  Jurisdiction is conferred on this Court by 15 U.S.C. § 1121(a) and 28 U.S.C. § 1338(a), in that this case arises under the Trademark Laws of the United States, 15 U.S.C. Sections 1051, *et seq.*

3.     Venue is proper in this District under 28 U.S.C. §§ 1391(b)(2).

## II.     THE PARTIES

4.     Plaintiff, Vampire Family Brands, LLC ("Vampire Family Brands") is a Delaware Limited Liability Company located in Ventura County, California.

5.     Defendant CHICAGO COFFEE ROASTERY, INC.  is upon information and belief, an Illinois Corporation doing business as COFFEE MASTERS ("Coffee Masters") throughout the United States, offering coffee for sale throughout the United States, and selling coffee throughout the United States and into this district via its website, www.coffeemasters.com

6.     Defendant Coffee Masters is, upon information and belief, the manufacturer and distributor of the accused coffee product in this case.

7.     Defendant New Kitchen Store is upon information and belief a company of a type unknown doing business from Walkerton, Indiana, doing business from its website newkitchenstore.com, offering coffee for sale throughout the United States, and selling coffee into this district via its website.

8.     Within the past year, Defendants have solicited orders for products that infringe Plaintiff's trademarks and have sold and shipped the infringing product to residents of Los Angeles, California and Defendants continue to offer the infringing product for sale to residents of California, including those residing within this district.

9.     Within the past month, Defendants have solicited orders for products that infringe Plaintiff's trademarks and/or have sold and shipped the

infringing product to residents of Los Angeles, California, and Defendants continue to offer the infringing product for sale to residents of California, including those residing within this district.

10.     Plaintiff does not know the true names or capacities of defendants named herein as DOES 1 through 20 inclusive, and therefore sues these defendants by such fictitious names.  Plaintiff will seek leave to amend this Complaint to allege the true names, capacities, and circumstances alleging the liability of said defendants at such time as the same is ascertained.  Plaintiff is informed and believes and, on that basis, alleges that each fictitiously named defendant is responsible in some manner for the occurrences herein alleged and that Plaintiff's damages as herein alleged were  proximately caused by the conduct of such defendants.

11.     Plaintiff is informed, believes, and alleges that, at all times herein mentioned, each of the Defendants were the agents, servants, employees, or attorneys of their codefendants and, in doing the things hereinafter alleged, were acting within the purpose, course, and scope of such agency and employment, and with the authority, permission, and consent of their codefendants.

## III.   <u>FACTS</u>

### A.  Plaintiff's Vampire Family Trademarks

12.     Vampire Family Brands, via its predecessors in interest, has been marketing for many years food and beverages under several federally registered trademarks consisting of or relating to the term VAMPIRE (collectively, the Vampire Family marks). The Vampire Family marks include the following federal registrations, many of which are incontestable pursuant to Section 15 of the Lanham Act, 15 U.S.C. § 1065:[1]

---

[1] Plaintiff's marks that have become incontestable through their use—if not all of the listed marks—are denoted by an asterisk (*) following their U.S. Registration Numbers.

| Mark | Reg. No. | Goods/Services |
|------|----------|----------------|
| VAMPIRE | 2263907* | Wine |
| | 3290011* | Glass- and beverage-ware |
| | 3669827* | Chocolate and coffee |
| | 3978444* | Restaurant and bar services |
| | 4776927 | Olive oil and balsamic vinegar |
| | 5444375 | Pre-mixed alcoholic beverages, other than beer based; pre-mixed alcoholic cocktails |
| | 6329522 | Hamburger sandwiches |

13.    The origin of Vampire wine, and Vampire Family Brand's claim of right, goes back to 1988, when its founder released a French-bottled Algerian Syrah under the brand name Vampire.  The first sale was to MCA Records and Alice Cooper, and the wine was promoted under the slogan, "Sip the Blood of the Vine."   Although the labels have changed over the years, along with the sourcing from Algeria to Italy then to Transylvania and, finally, to Napa, the marketing has remained similarly playful.

14.    However, as the source of the wine shifted from Transylvania, Romania to Napa, California, the marketing evolved to emphasize that the quality of the wine was actually extremely good, with Vampire wine having won numerous gold medals throughout the years and scores of 90 Points and higher from various critics.

15.    Plaintiff, via its predecessors in interest, expanded its wine and spirits business into gourmet quality foods, including Vampire Chocolate and Vampire Coffee

16.    Plaintiff's VAMPIRE family of brands are available for the world to see on its website www.Vampire.com. They have received coverage in various national magazines and newspapers, including Maxim, InStyle, Elle, Shape, Star Magazine, the New York Times, the LA Times, the Houston Chronicle, the Star Tribune, the Chicago Sun Times, and many more.  In addition, Plaintiffs' VAMPIRE family of brands have been shown on various national television shows, such as The View with Oprah Winfrey, Anderson Cooper (with Ashley Greene from Twilight fame), CNN Headline News, MTV's Viva La Bam, Food TV, and many more.

17.    Plaintiff markets its brands through a national network of wholesalers and via www.vampire.com.  For instance, VAMPIRE wine can be found nationally in chains of retail stores, including the Safeway supermarkets, Publix markets, Cost Plus World Market, the Yard House chain of restaurants, and elsewhere.

18.    Plaintiff, through its predecessors in interest, has been selling its VAMPIRE Coffee for more than fourteen years.

19.    Plaintiff sells its VAMPIRE coffee from its website www.vampire.com as well as on Amazon.com and elsewhere, including wholesale to restaurants and cafes.

20.    Plaintiff and its associates have worked hard to ensure that they put the best wine in the bottle as possible.  Over the last few years, Plaintiff's Vampire family of wines have received great reviews and won gold medals in many competitions, including the San Francisco Chronical Wine Competition for its Vampire Merlot, Vampire Cabernet Sauvignon, and Vampire Pinot Noir; the Los Angeles Invitational Wine challenge for its Vampire Cabernet

Sauvignon and Vampire Pinot Noir; the Access Live Wine & Spirits Tasting Competition for its Vampire Merlot; and the Texas International Rodeo Wine Competition.    Further, the Los Angeles International Wine & Spirits Competition gave Vampire Cabernet Sauvignon a rating of 92 points out of 100.   Plaintiff's highest-end wine, Trueblood Cabernet Sauvignon, has been rated 92 points and 97 points out of 100 by critics.

21.    Plaintiff has spent substantial amounts of time and money establishing, advertising, and promoting its Vampire family of brands. Plaintiff has established valuable goodwill through its brands' popularity, its advertising and sales, and its websites (including www.Vampire.com).   This goodwill is embodied by Plaintiff's Vampire Family marks.

**B. Defendants' Unauthorized Use of Plaintiff's Vampire Family Marks**

22.    Defendant Coffee Masters controls and operates the website www.coffeemasters.com from which it solicits orders, ships and sells to residents of California, coffee marketed under the brand name Vampire Vanilla (the "Accused Product").

23.    Exhibit A depicts the infringing coffee product offered and sold by Defendant Coffee Masters.

24.    Defendant New Kitchen Store controls and operates the website www.newkitchenstore.com from which it unlawfully solicits orders, ships and sells to residents of California coffee marketed under the brand name Vampire Vanilla (the "Accused Product").

25.    A printout of Defendant New Kitchen Store's website showing images of how it offers products unlawfully bearing Plaintiff's VAMPIRE name is attached as Exhibit B.

26.     Defendants use the word "vampire" to draw attention to their coffee products to improve the marketability and enhance sales of their infringing product.

27.     Defendants' intentional and wrongful infringing acts are harming Plaintiff's brands' reputation, are diluting the Vampire Family brands, and are disparaging.

28.     If Defendants are not stopped from marketing their infringing products by using Plaintiff's VAMPIRE mark, or marks confusingly similar to vampire—then consumers will likely be confused about the source and origin of Defendants' products and services and mistakenly conclude that Defendants' products or services are associated with Plaintiff and/or its licensees.

29.     Alternatively, if Defendants are not stopped from using Plaintiff's VAMPIRE mark—or marks confusingly similar to vampire—then consumers will likely be confused about the source of Plaintiff's or its licensees' products and services and mistakenly conclude that Plaintiff's or its licensees' products or services are associated with Defendants.

## COUNT I
## VIOLATION OF LANHAM ACT 15 U.S.C. §1125(a)
## (Against All Defendants)

30.     Plaintiff realleges the allegations in paragraphs 1 through 29.

31.     Defendants use of "Vampire," on the packaging and description and other marketing for its coffee products is identical to Plaintiff's trademark VAMPIRE.  Because the marks are identical, the marks are likely to engender the same connotation and overall commercial impression when considered in connection with Defendants' goods and services and with Plaintiff's coffee products, wines, spirits, ready-to-drink canned spirit cocktails, burgers, restaurant services, and other goods.

32.     The goods and services for which Defendants unlawfully use the Vampire mark is identical to or closely related to the goods and services for which Plaintiff uses its VAMPIRE mark giving rise to the mistaken belief that the goods and services of the parties have the same source.

33.     The likelihood of confusion is even greater given that both Plaintiff and defendants sell their coffee products online.

34.     Furthermore, the channels of trade and class(es) of purchasers are the same for both Plaintiff's and Defendants' goods and services, and the price of Defendants' coffee products and Plaintiff's coffee products  are similar, further resulting in a likelihood of confusion.

35.     Defendants' use of the word "Vampire" so closely resembles Plaintiff's products and services that the public is likely to be confused and deceived, and to assume erroneously that Defendants' infringing  products are produced by Plaintiff or under Plaintiff's direction; that Defendants' offerings are part of Plaintiff's family of brands; or that Defendants are in some way connected with, sponsored by, or affiliated with Plaintiff—all to Plaintiff's detriment and irreparable damage.

36.     Alternatively, Defendants' marketing and advertising efforts are likely to mislead consumers to believe that Plaintiff's goods and services may be the unauthorized use of Defendants' trademarks.  If Defendants continue their wrongful acts, consumers are likely to be misled to believe that Plaintiff is misusing the VAMPIRE marks.

37.     Defendants are not affiliated with, connected with, endorsed by, or sponsored by Plaintiff, nor has Plaintiff approved or authorized any of the goods or services offered or sold by Defendants.

38.     Plaintiff has no control over the nature and quality of the goods and services offered and sold by Defendants and its licensees.  Any failure, neglect, or default by Defendants or its licensees in providing such products or

services will reflect adversely on Plaintiff as being the believed source of said failure, neglect, or default, thereby hampering Plaintiff's continuing efforts to protect its outstanding reputation and further build that reputation. Said failure, neglect, or default will irreparably harm Plaintiff by causing loss of revenue to Plaintiff and loss of value of Plaintiff's considerable expenditures to promote its goods and services under the VAMPIRE marks.

39.     Without the knowledge or consent of Plaintiff, Defendants have marketed and sold in interstate commerce, and in commerce substantially affecting interstate commerce, products and services branded under the name VAMPIRE and continue to do so. Defendants have promoted, publicized, advertised, offered for sale, and sold products and services using the VAMPIRE mark (or marks confusingly similar to) through persons not authorized by, employed by, or associated in any way with Plaintiff, and they have used the VAMPIRE trademark as a false designation and false representation for coffee.

40.     None of Defendants' activities described in this complaint have been authorized by Plaintiff. Defendants' unauthorized use of Plaintiff's trademarks and trade names in interstate commerce, or commerce substantially affecting interstate commerce, constitutes infringement and an inducement to infringe Plaintiff's trademarks and/or trade names.  Such activities are likely to cause confusion, mistake, and to deceive the public at large.

41.     Upon information and belief, Defendants have acted with the unlawful purpose of:

        a.  Improperly taking advantage of the valuable goodwill belonging to Plaintiff;

        b.  Soliciting Plaintiff's customers and potential customers, and attempting to sell and selling to such customers goods and

services marketed under the VAMPIRE marks through persons not authorized by, employed by, or associated in any way with Plaintiff;

c.  Inducing others to infringe Plaintiff's trademarks and trade names; and

d.  Causing the goods of persons not authorized by, employed by, or associated in any way with Plaintiff to be falsely represented as if they were rendered, authorized by, sponsored by, endorsed by, or otherwise connected with Plaintiff and its licensed trademarks and trade names.

42.   Defendants' conduct, as alleged in this complaint, constitutes a violation of 15 U.S.C. § 1125(a).

43.   If Defendants are allowed to continue marketing and selling the accused goods and services, Plaintiff will be damaged as alleged in this complaint and the Defendants will profit thereby.  Furthermore, unless the Court permanently enjoins Defendants' infringing conduct, Plaintiff's business, goodwill, and reputation will suffer irreparable injury of an insidious and continuing sort that cannot be adequately calculated and compensated in monetary damages.

44.   This high-jacking of Plaintiff's VAMPIRE trademarks improved the marketability of Defendants' products  as the use of the word "vampire" make Defendants' website and products more interesting.  It led to more people hearing about Defendants' website and products leading them to come in and try other products sold by Defendants, thus lowering Defendants' costs to advertise.

45.   Defendants are acting willfully and with an intent to use or abuse the goodwill Plaintiff has worked hard to develop.  Plaintiff is therefore

entitled to treble damages arising therefrom, as well as reimbursement of Plaintiff's attorneys' fees and costs.

46.    The intentional nature of defendant's acts makes this an exceptional case under 15 U.S.C. §1117(a).

## COUNT II
## VIOLATION OF LANHAM ACT 15 U.S.C. §1114
## (Against All Defendants)

47.    Plaintiff repeats each allegation contained in paragraphs 1 through 46 as though set forth herein at length.

48.    Defendants have engaged in, and continue to engage in, the wrongful exploitation of Plaintiff's registered marks.

49.    Defendants' goods are so closely related to Plaintiff's goods that the public is likely to be confused, be deceived, and erroneously assume that Defendants' Vampire branded goods and services, as packaged, advertised, promoted, and sold, are Plaintiff's, or that Defendants are in some way connected with, sponsored by, or affiliated with Plaintiff—all to Plaintiff's detriment and irreparable damage.

50.    Defendants are not affiliated with, connected with, endorsed by, or sponsored by Plaintiff.  Furthermore, Plaintiff has not approved any of the goods or services offered or sold by Defendants.

51.    Defendants have acted willfully and with an intent to ride on, step on, or demolish the goodwill Plaintiff has worked hard to develop. Defendants' aforesaid infringing conduct has been willful and with knowledge that the sale, marketing, advertisement, and promotion of their accused products will hinder the future commercial success of Plaintiff's Vampire Family of brands, including its further foray into the food, cocktail, and restaurant space.  Plaintiff is therefore entitled to treble damages arising therefrom, as well as reimbursement of Plaintiff's attorneys' fees and costs.

# COUNT III
## FOR CONTRIBUTORY TRADEMARK INFRINGEMENT
### (Against Defendant Coffee Masters.)

52.     Plaintiff repeats each allegation contained in paragraphs 1 through 51 as though set forth herein at length.

53.     In addition to marketing, selling, and advertising the Accused Product itself, upon information and belief, Defendant Coffee Masters has recruited and is currently recruiting other wholesalers and retailers to infringe upon Plaintiff's VAMPIRE trademarks.  Defendant Coffee Masters is actively allowing, permitting and encouraging its wholesale distributors  and downstream retailers to profit at Plaintiff's expense while they jointly and severally combine to infringe upon Plaintiff's trademarks.

54     Plaintiff also sells and or offers its products to wholesalers and downstream retailers.  Defendant Coffee Masters conduct is detrimental to Plaintiff, and likely to cause confusion in the marketplace.

55.     Defendant Coffee Masters wholesale distributors and its traditional  downstream retailers are engaging in unlawful conduct including but not necessarily limited to the promotion, advertisement, offer for sale, sale and distribution of infringing goods in violation of the Lanham Act, as amended.

56.     Defendant Coffee Masters has actual knowledge of its wholesale distributors and the traditional downstream retailers' illegal activities from, among other things, actively selling to its wholesale distributors with the intent for those wholesale distributors to sell the Accused Product to the traditional downstream retailers despite having at least constructive knowledge, if not actual knowledge, of Plaintiff's registered trademarks for VAMPIRE.

57.     Defendant Coffee Masters has deliberately disregarded Plaintiff's trademark registrations.

58.     Defendant Coffee Masters has materially encouraged, enabled, and contributed to the infringing conduct of its wholesale distributors and the traditional downstream retailers by providing, among other things, the Accused Product to them and or otherwise selling to wholesale distributors it encourages to sell the Accused Product to the traditional downstream retailers.

59.     As a result of the actions of Defendant Coffee Masters' wholesale distributors and the traditional downstream retailers' actions in infringing Plaintiff's VAMPIRE trademarks through their advertising, promotions, and selling of Defendants' Accused Products, Plaintiff has been damaged in an amount to be proved at trial and is  entitled to the profits of Defendants' wholesalers and the profits of their traditional downstream retailers.

60.     Defendant Coffee Masters therefore bears contributory liability for unlawful sales by its wholesalers and the unlawful sales by the traditional downstream retailers' of Accused Product bearing Plaintiff's Trademarks in violation of 15 U.S.C. § 1051, et seq. and the common law.

61.     Plaintiff has no adequate remedy at law and has suffered irreparable harm and damage as a result of the contributory counterfeiting conduct of the Defendants.

## COUNT IV
## FOR INDUCING TRADEMARK INFRINGEMENT
### (Against Defendant Coffee Masters.)

62.     Plaintiff repeats each allegation contained in paragraphs 1 through 61 as though set forth herein at length.

63.     As described above, Defendant Coffee Masters distributes its Accused Products to third parties with the clear intent and purpose of inducing its wholesale distributors and its traditional downstream retailers to infringe on Plaintiff's VAMPIRE trademarks.  Defendant Coffee Masters' wholesale distributors and traditional downstream retailers have and

continue to infringe on Plaintiff's VAMPIRE trademarks by advertising, promoting, and selling Defendant Coffee Masters' Accused Products in the United States.

64.     As a result of Defendant Coffee Masters' wholesale distributors and its traditional downstream retailers' actions in infringing Plaintiff's VAMPIRE trademarks through their advertising, promotions, and selling of Defendant Coffee Masters' Accused Products, Plaintiff has been damaged in an amount to be proved at trial and is entitled to the profits of Defendant Coffee Masters and the profits of its wholesale distributors and the profits of their traditional downstream retailers.

65.     Defendant Coffee Masters therefore is liable for inducing its wholesale distributors and its traditional downstream retailers to sell products that infringe upon Plaintiff's Trademarks in violation of 15 U.S.C. § 1051, et seq. and the common law.

66.     Plaintiff has no adequate remedy at law and has suffered irreparable harm and damage as a result of the wrongful inducement of Defendant Coffee Masters.

## COUNT V
## FOR VICARIOUS LIABILITY FOR TRADEMARK INFRINGEMENT
### (Against Defendant Coffee Masters.)

67.     Plaintiff repeats each allegation contained in paragraphs 1 through 66 as though set forth herein at length.

68.     Upon information and belief, the illegal sales of products that infringe on the Plaintiff's Trademarks have generated significant sums of monies for Defendant Coffee Masters.  Despite Defendant Coffee Masters' duty and right to control the downstream retailers infringing conduct, and the conduct of its wholesale distributors who Defendant Coffee Masters sells the Accused Product to for the express purpose for them to sell the Accused Product to the traditional downstream retailers, Defendant Coffee Masters

has taken no steps to stop or otherwise prevent the ongoing infringing activity by its wholesale distributors and the traditional downstream retailers.  Instead, Defendant Coffee Masters' conduct has been to encourage ongoing infringement.   Defendant Coffee Masters is  therefore vicariously liable for the damages caused to Plaintiff as a result of the illegal promotion, advertisement, offer for sale and/or sale of the Accused Products by its downstream retailers in violation of 15 U.S.C. § 1051, et seq. and the common law.

69.    Plaintiff has sustained damages as a result of Defendant Coffee Masters' wrongful vicarious conduct in an amount to be determined at trial. Plaintiff is also entitled to the profits of Defendant Coffee Masters and its downstream wholesalers and retailers caused by the infringement of the downstream wholesalers and retailers.

70.    Defendant Coffee Masters therefore is vicariously liable for the downstream retailers' infringement (and the wholesale distributors' infringement) of Plaintiff's Trademarks in violation of 15 U.S.C. § 1051, et seq. and the common law.

71.    Plaintiff has no adequate remedy at law and has suffered irreparable harm and damage as a result of the wrongful inducement of Defendant Coffee Masters.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

A. That the Court adjudge and decree that Defendants have falsely designated the origin of certain goods and services as those of Plaintiff, have made and used false representations in connection with the sale, offering for sale, promotion and advertising of such goods and services, and have unfairly competed with Plaintiff at common law.

B.  That the Court adjudge and decree that Defendants have infringed

1   Plaintiff's registered VAMPIRE trademarks.

2       C. That the Court adjudge and decree that Defendant Coffee Masters

3   unlawfully induced others to infringe upon Plaintiff's trademarks, and find

4   that Defendant Coffee Masters is contributorily liable for the trademark

5   infringement of others and vicariously liable as well.

6       D. That the Court permanently enjoin Defendants, its agents, servants,

7   employees, attorneys, and all persons acting in concert or participation with

8   them or any of them from:

9       a. Using VAMPIRE, or any other word or words which are similar

10   to, or a colorable imitation of, Plaintiff's trade names and marks,

11   either alone, as part of, or together with, any other word or

12   words, trademark, service mark, trade name, or other business

13   or commercial designation in connection with the sale, offering

14   for sale, advertising, and promotion of food or beverage

15   products and accessories;

16       b. Using VAMPIRE, or any other word or words which are similar

17   to, or a colorable imitation of, Plaintiff's trade names and marks,

18   either alone, as part of, or together with, any other word or

19   words, trademark, service mark, trade name, or other business

20   or commercial designation in connection with the sale, offering

21   for sale, advertising, and promotion of food or beverage

22   products and accessories;

23       c. Selling, offering to sell, marketing, distributing, advertising, and

24   promoting any food or beverage product, good, or service with

25   the word VAMPIRE (or similar word) displayed on any

26   product, packaging, advertising, or promotional materials;

27       d. Representing directly or indirectly by words or conduct that any

28   food or beverage product, good, or service offered for sale, sold,

**COMPLAINT**

promoted, or advertised by Defendant is authorized, sponsored by, endorsed by, or otherwise connected with Plaintiff;

e.  Aiding or abetting in unfair competition against Plaintiff;

f.  Aiding or abetting in false advertising; and

g.  Inducing others to engage in any of these aforementioned acts.

E.  That the Court award an amount to be determined at trial, but at least an amount equivalent to treble the amount of Defendants' illicit profits *(including profits made by Defendants from all sales since they used Plaintiff's mark to bring customers in to buy other products)*, or Plaintiff's lost profits, whichever is greater.

F.  That the Court further award an amount to be determined at trial to additionally include the cost of prospective corrective advertising.

G. That the Court award Judgment against Defendants for the full costs of this action, including the attorney's fees reasonably incurred by Plaintiff.

H. That the Court order such other further and different relief as the nature of this action may require and as the Court may deem just and proper.

I.  That the Court retain jurisdiction of this action for the purpose of enabling Plaintiff, in its discretion, to apply to this Court at any time for such further orders and directions as may be necessary or appropriate for the interpretation or execution of any Order entered in this action, for the modification of any such Order, for the enforcement of compliance therewith, and/or for the punishment of any violation thereof.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby requests a trial by jury on all triable issues raised by the Complaint.

DATED this 8th day of October, 2023.

Respectfully submitted by:


/s/Michael Machat

Michael Machat, Esq.
MACHAT & ASSOCIATES, P.C.
8730 W. Sunset Blvd., Suite 250
West Hollywood, California 90069
Telephone: (310) 860-1833
Email: michael@machatlaw.com
*Counsel for Plaintiff*

**COMPLAINT**